**Electronically Filed
Intermediate Court of Appeals
30444
31-JAN-2014
10:53 AM**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI‘I

---o0o---

## NO. 30444

### Case No. CU-10-278

STATE OF HAWAI‘I; CITY AND COUNTY OF HONOLULU;
COUNTY OF HAWAI‘I; COUNTY OF MAUI; COUNTY OF KAUAI;
HAWAI‘I HEALTH SYSTEMS CORPORATION; AND THE JUDICIARY,
Complainants/Appellees-Appellees
vs.
DAYTON NAKANELUA, State Director,
UNITED PUBLIC WORKERS, AFSCME, LOCAL 646, AFL-CIO
and UNITED PUBLIC WORKERS, AFSCME, LOCAL 646, AFL-CIO (2009-42),
Respondents/Appellants-Appellants,
and
HAWAI‘I LABOR RELATIONS BOARD; JAMES B. NICHOLSON;
SESNITA A.D. MOEPONO; and ROCK B. LEY,[1]
Agency/Appellees-Appellees.

### Case No. CE-10-726

UNITED PUBLIC WORKERS, AFSCME, LOCAL 646, AFL-CIO,
Complainant/Appellant-Appellant,
vs.
NEIL DIETZ,[2] Chief Negotiator,
Office of Collective Bargaining, State of Hawai‘i (2009-043),
Respondent/Appellee-Appellee,
and
HAWAI‘I LABOR RELATIONS BOARD; JAMES B. NICHOLSON;
SESNITA A.D. MOEPONO; and ROCK B. LEY,
Agency/Appellees-Appellees.

### (CIVIL NO. 09-1-2488)

---

[1] Pursuant to Hawai‘i Rules of Appellate Procedure (HRAP) Rule 43(c)(1) (2010), Sesnita A.D. Moepono and Rock B. Ley, current members of the Hawai‘i Labor Relations Board (HLRB), are automatically substituted as parties for Emory J. Springer and Sarah R. Hirakami, former members of the HLRB.

[2] Pursuant to HRAP Rule 43(c)(1), Neil Dietz, the current Chief Negotiator, is automatically substituted as a party for Marie Laderta, the former Chief Negotiator.

NO. 30568

UNITED PUBLIC WORKERS, AFSCME, LOCAL 646, AFL-CIO,
Union-Appellee/Cross-Appellant,
vs.
STATE OF HAWAI'I; THE JUDICIARY;
HAWAI'I HEALTH SYSTEMS CORPORATION,
Employers-Appellants/Cross-Appellees,
and
CITY AND COUNTY OF HONOLULU (2009-044),
Employer-Appellee.

(SPECIAL PROCEEDINGS NO. 09-1-0305)


NO. CAAP-10-0000166

Case No. CU-10-278

STATE OF HAWAI'I, CITY AND COUNTY OF HONOLULU;
COUNTY OF HAWAI'I; COUNTY OF MAUI; COUNTY OF KAUAI;
HAWAI'I HEALTH SYSTEMS CORPORATION; AND THE JUDICIARY,
Complainants/Appellees-Appellees,
vs.
DAYTON NAKANELUA, State Director,
UNITED PUBLIC WORKERS, AFSCME, LOCAL 646, AFL-CIO
AND UNITED PUBLIC WORKERS, AFSCME, LOCAL 646, AFL-CIO (2009-042)
Respondents/Appellants-Appellants,
and
HAWAI'I LABOR RELATIONS BOARD; JAMES B. NICHOLSON;
SESNITA A.D. MOEPONO; and ROCK B. LEY,
Agency/Appellees-Appellees.

Case No. CE-10-726

UNITED PUBLIC WORKERS, AFSCME, LOCAL 646, AFL-CIO,
Complainant/Appellant-Appellant,
vs.
NEIL DIETZ, Chief Negotiator, Office of
Collective Bargaining, State of Hawai'i (2009-043),
Respondent/Appellee-Appellee,
and
HAWAI'I LABOR RELATIONS BOARD; JAMES B. NICHOLSON;
SESNITA A.D. MOEPONO; and ROCK B. LEY,
Agency/Appellees-Appellees.

(CIVIL NO. 10-1-0323)

2

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT

January 31, 2014

NAKAMURA, CHIEF JUDGE, AND FOLEY AND LEONARD, JJ.

OPINION OF THE COURT BY NAKAMURA, CHIEF JUDGE

These consolidated appeals stem from a dispute between government employers and a government-employee union regarding the process of selecting a neutral arbitrator after an impasse was reached in the parties' renegotiation of their collective bargaining agreement (CBA) for a new term. The type of arbitration involved in this case, known as "interest arbitration,"[3] is designed to determine the terms of the parties' CBA when the parties cannot come to an agreement and an impasse is reached. The use of arbitration to resolve the impasse in this case is mandated by statute.

The government employers, the State of Hawai'i (State), the Judiciary, Hawaii Health Systems Corporation, and the City and County of Honolulu (City) (collectively, "Employer"), and the government-employee union, United Public Workers, AFSCME, Local 646, AFL-CIO (UPW), reached an impasse in the renegotiation of the CBA for Bargaining Unit 10 (Unit 10), which is comprised of institutional, health, and correctional workers. Employer and UPW entered into a Memorandum of Agreement (MOA) setting forth an alternate impasse procedure for selecting a panel of arbitrators to conduct the arbitration required by Hawaii Revised Statutes (HRS) § 89-11 (2012) to resolve the impasse. However, after a dispute arose over the selection of the neutral arbitrator under the MOA, both Employer and UPW filed prohibited practice complaints with the Hawai'i Labor Relations Board (HLRB or Board). UPW also filed a motion to compel arbitration concerning

_____

[3] As used in labor law, the term "interest arbitration" means "arbitration of a dispute concerning what provisions will be included in a new collective bargaining agreement." Black's Law Dictionary 120 (9th ed. 2009). "This type of arbitration is most common in public-sector collective bargaining." Id.

3

this dispute with the Circuit Court of the First Circuit (Circuit Court).

The HLRB issued an order for interlocutory relief in Employer's and UPW's prohibited practice cases that directed the American Arbitration Association (AAA) to select the neutral arbitrator. After the neutral arbitrator was selected, arbitration hearings were held and the arbitration panel issued its award. UPW filed a motion to confirm the arbitration award with the Circuit Court, which the Circuit Court granted. In these consolidated appeals, neither UPW nor Employer challenges the terms of the arbitration award or seeks to invalidate the award, which pertains to the 2009-2011 CBA. After the Circuit Court issued its order confirming the arbitration award, UPW filed a motion in Circuit Court to have Employer found in civil contempt for allegedly violating the arbitration award and disobeying the confirmation order by failing to meet and confer to complete the final drafting of the CBA. The Circuit Court denied UPW's motion.

On appeal, UPW argues that the Circuit Court erred in: (1) determining that the HLRB, and not the Circuit Court, had jurisdiction to resolve the parties'[4] dispute over the selection of the neutral arbitrator; (2) determining that the HLRB had not exceeded its authority in issuing the order for interlocutory relief directing the AAA to select the neutral arbitrator; (3) determining that the HLRB had not erred or violated UPW's due process rights in ruling that UPW had committed a prohibited practice in connection with the selection of the neutral arbitrator; and (4) denying UPW's motion to find Employer in civil contempt.

We conclude that because neither UPW nor Employer challenges or seeks to invalidate the terms of the arbitration

---

[4] Although the HLRB is a party in Appeal Nos. 30444 and CAAP-10-0000166, which involve its decisions, when we refer to "the parties," we mean UPW and Employer.

award on appeal, and UPW, in particular, has moved to confirm and enforce the arbitration award, UPW's challenges to the selection of the neutral arbitrator in these appeals are moot. However, we further conclude that certain aspects of UPW's challenges to the selection of the neutral arbitrator, namely, whether the HLRB or the Circuit Court had original jurisdiction to resolve the parties' dispute over the selection and whether the HLRB exceeded its authority in the remedial interlocutory relief it granted, falls within the public interest exception to the mootness doctrine. See Hawaii Gov't Emps. Ass'n, AFSCME, Local 152, AFL-CIO v. Lingle (hereinafter, "HGEA"), 124 Hawaiʻi 197, 202 n.8, 239 P.3d 1, 6 n.8 (2010). As explained in greater detail below, we hold that UPW's and Employer's dispute over the selection of the neutral arbitrator and UPW's motion for civil contempt involved controversies concerning prohibited practices over which the HLRB had exclusive original jurisdiction. We further hold that the HLRB did not exceed its authority in issuing its order for interlocutory relief. Accordingly, we hold that UPW is not entitled to the relief it requests in these consolidated appeals.

BACKGROUND

I.

HRS § 89-11 (2012)[5] establishes the process for resolving an impasse between a public employer and the exclusive bargaining representative of a bargaining unit in negotiating the terms of a renewed CBA. HRS § 89-11(e), which applies to Unit 10, provides for mediation if an impasse exists, and then submission to arbitration if the impasse continues for more than twenty days.[6] In this type of arbitration, known as "interest

_____

[5] The version of HRS § 89-11 that was in effect as of 2012 is applicable to these appeals. In 2013, HRS § 89-11(e) was amended in ways not material to our analysis. See 2013 Haw. Sess. Laws Act 137, § 4 at 429.

[6] HRS § 89-11(e) provides in relevant part:

(e) If an impasse exists between a public employer and the exclusive representative of bargaining unit . . . (10),

(continued...)

5

arbitration," the arbitrator or arbitration panel is used to resolve the impasse by determining the actual contract terms that will bind the parties during the life of their new collective bargaining agreement.[7]

HRS § 89-11(e)(2)(A)-(D) sets forth procedures for selecting a three-member panel to conduct the interest arbitration and deadlines for the arbitration panel to hold a hearing and issue the arbitration decision. HRS § 89-11(f) establishes the factors the arbitration panel must give weight to in reaching its decision and requires the panel to "include in its written report or decision an explanation of how the factors were taken into account[.]"[8] HRS § 89-11(a) authorizes the

---

[6] (...continued)
institutional, health, and correctional workers . . . , the board shall assist in the resolution of the impasse as follows:

> (1)  Mediation. During the first twenty days after the date of impasse, the board shall immediately appoint a mediator, representative of the public from a list of qualified persons maintained by the board, to assist the parties in a voluntary resolution of the impasse.

> (2)  Arbitration. If the impasse continues twenty days after the date of impasse, the board shall immediately notify the employer and the exclusive representative that the impasse shall be submitted to a three-member arbitration panel who shall follow the arbitration procedure provided herein.

[7] See, Charles B. Craver, The Judicial Enforcement of Public Sector Interest Arbitration, 21 B.C.L. Rev. 557, 558 n.8 (1980). Interest arbitration is distinguished from grievance arbitration, in which the arbitrator or arbitration panel is only empowered to decide disputes concerning the interpretation and application of the terms of an already existing collective bargaining agreement. Id.

[8] HRS § 89-11(f) provides:

> (f) An arbitration panel in reaching its decision shall give weight to the following factors and shall include in its written report or decision an explanation of how the factors were taken into account:

> > (1)  The lawful authority of the employer, including the ability of the employer to use special funds only for authorized purposes or under specific circumstances because of limitations imposed by federal or state laws or county ordinances, as the case may be;

(continued...)

parties to enter into a written agreement setting forth an alternate impasse procedure to the one set forth in HRS § 89-11(e) that culminates in an arbitration decision pursuant to HRS § 89-11(f).[9/] The alternate impasse procedure is required to

---

[8/] (...continued)

    (2)    Stipulations of the parties;

    (3)    The interests and welfare of the public;

    (4)    The financial ability of the employer to meet these costs; provided that the employer's ability to fund cost items shall not be predicated on the premise that the employer may increase or impose new taxes, fees, or charges, or develop other sources of revenues;

    (5)    The present and future general economic condition of the counties and the State;

    (6)    Comparison of wages, hours, and conditions of employment of the employees involved in the arbitration proceeding with the wages, hours, and conditions of employment of other persons performing similar services, and of other state and county employees in Hawaii;

    (7)    The average consumer prices for goods or services, commonly known as the cost of living;

    (8)    The overall compensation presently received by the employees, including direct wage compensation, vacation, holidays and excused time, insurance and pensions, medical and hospitalization benefits, the continuity and stability of employment, and all other benefits received;

    (9)    Changes in any of the foregoing circumstances during the pendency of the arbitration proceedings; and

    (10)    Such other factors, not confined to the foregoing, which are normally or traditionally taken into consideration in the determination of wages, hours, and conditions of employment through voluntary collective bargaining, mediation, arbitration, or otherwise between the parties, in the public service or in private employment.

[9/] HRS § 89-11(a) provides:

    (a)   A public employer and an exclusive representative may enter, at any time, into a written agreement setting forth an alternate impasse procedure culminating in an arbitration decision pursuant to subsection (f), to be invoked in the event of an impasse over the terms of an initial or renewed agreement. The alternate impasse procedure shall specify whether the parties desire an arbitrator or arbitration panel, how the neutral arbitrator is to be selected or the name of the person whom the

(continued...)

specify whether the parties desire an arbitrator or arbitration panel; how the neutral arbitrator will be determined or the name of the neutral arbitrator selected by the parties; and other details regarding the issuance of the arbitration decision. HRS § 89-11(a). Although HRS § 89-11(a) permits the parties to agree to an alternate impasse procedure for selecting arbitrators and conducting the arbitration, HRS § 89-11 requires that the impasse be resolved through arbitration.[10]

II.

On November 20, 2008, UPW entered into negotiations with Employer over the renewal of and modifications to the Unit 10 CBA for the period from July 1, 2009, through June 30, 2011. The parties could not reach mutual agreement on all the terms being negotiated, and thus, the HLRB issued an order pursuant to HRS § 89-11(c)(2) declaring that the parties had reached an impasse. On March 3, 2009, UPW and Employer entered into an MOA setting forth an alternative impasse procedure pursuant to HRS § 89-11(a). The MOA named Dayton Nakanelua (Nakanelua), the UPW State Director, and Marie Laderta (Laderta), the Chief Negotiator for the State, as the representatives for UPW and Employer, respectively.

The MOA set forth the procedure and deadlines for selecting a panel of three arbitrators. Employer and UPW would

--------------------------------------------------

(...continued)

parties desire to be appointed as the neutral arbitrator, and other details regarding the issuance of an arbitration decision. When an impasse exists, the parties shall notify the board if they have agreed on an alternate impasse procedure. In the absence of an alternate impasse procedure, the board shall assist in the resolution of the impasse at times and in the manner prescribed in subsection (d) or (e), as the case may be. If the parties subsequently agree on an alternate impasse procedure, the parties shall notify the board. The board shall immediately discontinue the procedures initiated pursuant to subsection (d) or (e) and permit the parties to proceed with their procedure.

[10] The parties, however, may reach voluntary settlement of unresolved issues at any time prior to issuance of the arbitration decision, HRS § 89-11(i), and may by mutual agreement amend or modify the arbitration decision. HRS § 89-11(g).

each select a panel member, and a third neutral arbitrator would be selected by mutual agreement of the parties to serve as the chair of the panel. If mutual agreement as to the neutral arbitrator could not be reached by July 6, 2009, the MOA provided that the HLRB would request a list of five potential arbitrators from the AAA, and each party would alternatively strike a name from the list until a single name remained. The striking process was to be completed within five working days after receiving the list from the AAA.

By letter dated June 29, 2009, UPW designated Clifford Uwaine to serve as its panel member. By letter dated July 13, 2009, Laderta selected Georgina Kawamura as Employer's panel member, but later replaced Kawamura with Stanley Shiraki.

UPW and Employer could not mutually agree on the neutral arbitrator by the agreed upon deadline. Accordingly, on July 15, 2009, the AAA provided the parties with the following five names of potential arbitrators from which to select the neutral arbitrator: Sara Adler, Norman Brand, Fredric R. Dichter, Jonathan Dworkin, and William E. Riker. Under the MOA, the neutral arbitrator was to be selected by the parties on or before July 22, 2009. However, when that date passed without the parties beginning the striking process, the parties agreed to amend the MOA to extend the deadline for selecting the neutral arbitrator to July 28, 2009.

According to Employer, after receiving the AAA list, Laderta attempted to contact Nakanelua regarding the selection of the neutral arbitrator prior to the amended deadline, but Nakanelua did not return her calls. On July 28, 2009, Herbert R. Takahashi, Esq. (Takahashi), UPW's attorney, sent a letter to each public employer (or its counsel) involved in the interest arbitration with Unit 10, stating that he would be selecting the arbitrator in behalf of UPW and requesting verification of "who will be doing the selection for the employer jurisdictions." Deputy Attorney General James E. Halvorson (Halvorson) informed

9

Takahashi by letter dated July 31, 2009, that he had been assigned to represent Employer and would be "selecting the [a]rbitrator in this matter." Takahashi responded with a letter dated August 3, 2009, requesting clarification from Halvorson regarding "which 'employer' you represent." Halvorson responded by letter dated August 6, 2009, reiterating that he represented Employer "in the upcoming Unit 10 interest arbitration" and would be conducting the selection of the neutral arbitrator. Halvorson also requested that Takahashi contact him to make arrangements to begin the selection process.

On August 10, 2009, Halvorson requested the HLRB's assistance in facilitating selection of the neutral arbitrator. On August 13, 2009, the HLRB held a meeting with the parties where Halvorson proposed to initiate the striking procedure. Takahashi refused to begin the striking process at that meeting. Takahashi wrote to Halvorson by letter dated August 14, 2009, asking him to proceed with the first strike, but stating that such action would not constitute a waiver of UPW's right to contest Halvorson's authority to represent Employer.

Halvorson exercised Employer's first strike by striking William E. Riker in an undated letter received by Takahashi on August 18, 2009. Takahashi responded by letter dated August 20, 2009, which Halvorson asserted he received on August 24, 2009, striking Norman Brand.

In an August 21, 2009, email, AAA case manager Chris Camardella (Camardella) advised the parties that none of the five arbitrators would likely be available to accommodate the September 11, 2009, date set by the MOA for commencement of the arbitration hearing due to the delay in selecting the neutral arbitrator. In his email, Camardella set a deadline of August 25, 2009, for the parties to select the neutral arbitrator and stated that absent receipt of advice from the parties, AAA would administratively appoint an arbitrator at that time. Takahashi responded to Camardella by letter dated August 24, 2009,

asserting that the AAA lacked the authority to set a deadline for the selection of the neutral arbitrator or to appoint the neutral arbitrator. In his letter to AAA, Takahashi also noted that there was a "dispute over who the 'employer' is, and whether the selection of arbitrators by the State . . . is improper."

Employer subsequently sent a letter to Takahashi dated August 26, 2009, asserting that Takahashi had "stonewalled any attempts to select [a neutral] arbitrator[,]" and that he had "delayed the selection by taking one week to make [his] strike." In addition, Employer claimed that Takahashi was "not acting in good faith" by continuing to challenge Halvorson's authority to act for Employer, and thus, UPW had waived certain of its rights related to the interest arbitration. Takahashi responded by letter dated August 27, 2009, requesting Employer to make its second strike, which Employer refused to do.

### III.

On August 24, 2009, Employer filed a prohibited practice complaint with the HLRB against UPW and Nakanelua, State Director of UPW, in Case No. CU-10-278. Employer's complaint asserted, among other things, that: (1) Employer's Chief Negotiator (Laderta) attempted to contact UPW's State Director (Nakanelua) from July 15, 2009, until July 28, 2009, but that Nakanelua never returned Laderta's calls; and (2) UPW has refused to participate in the selection of an arbitrator or honor the AAA's August 25, 2009, deadline for selection. Employer alleged that UPW committed a prohibited practice through its wilful violation of HRS § 89-13(b)(4)[11] by refusing to comply with HRS § 89-11.

---

[11] HRS § 89-13(b)(4) (2012) provides:

> (b) It shall be a prohibited practice for a public employee or for an employee organization or its designated agent wilfully to:
>     . . . ;
>
> (4) Refuse or fail to comply with any provision of this chapter[.]

11

On August 31, 2009, UPW filed a prohibited practice complaint with the HLRB against Laderta, Chief Negotiator, Office of Collective Bargaining, State of Hawai'i, in Case No. CE-10-726. UPW's complaint asserted, among other things, that: (1) on August 26, 2009, Laderta refused to exercise her second strike from the remaining members on the AAA list; and (2) on and after August 28, 2009, Laderta has willfully refused to proceed with the arbitrator selection process as required by the MOA. UPW alleged that Laderta committed a prohibited practice in wilful violation of HRS § 89-13(a)(8).[12]

On September 2, 2009, the State filed a motion for interlocutory relief in Case No. CU-10-278 (Motion for Interlocutory Relief), seeking a declaratory order that UPW: (1) is in violation of the MOA; (2) committed a prohibited practice; and (3) waived its right either (a) to participate in the interest arbitration or (b) to participate in the selection of the neutral arbitrator. On September 10, 2009, UPW filed a motion to dismiss Employer's complaint for lack of subject matter jurisdiction and failure to state a claim, or in the alternative, for summary judgment (Motion to Dismiss Case No. CU-10-278). On September 10, 2009, UPW filed a motion for summary judgment on its complaint in Case No. CE-10-726 (Motion for Summary Judgment).

The HLRB consolidated Case Nos. CU-10-278 and CE-10-726. On September 21, 2009, the HLRB held a hearing on (1) the State's Motion for Interlocutory Relief, (2) UPW's Motion to Dismiss Case No. CU-10-278, and (3) UPW's Motion for Summary Judgment in Case No. CE-10-726.

---

[12] HRS § 89-13(a)(8) (2012) provides:

(a) It shall be a prohibited practice for a public employer or its designated representative wilfully to:

. . . ;

(8) Violate the terms of a collective bargaining agreement[.]

On September 25, 2009, the HLRB issued Order No. 2640, which granted, in part, the State's Motion for Interlocutory Relief, but did not rule on the other motions. The HLRB determined that "under [HRS] Chapter 89[,] the Board has exclusive jurisdiction over disputes involving interest arbitration as it does over disputes involving other collective bargaining and collective bargaining agreements." The HLRB recited the numerous filings by and correspondences between UPW and Employer pertaining to the selection of the neutral arbitrator, and it concluded:

19.   It is clear to the Board that there has been undue delay in the selection of the neutral arbitrator. Because it is the employer that moved the Board for interlocutory relief, the Board's analysis is therefore based upon whether or not the employer is likely to prevail at trial. The Board concludes that, given the history of events regarding the interest arbitration procedure, the employer is likely to prevail on the merits that the UPW committed a prohibited practice by wilfully failing to comply with the impasse procedure set forth in HRS § 89-11 and by extension the alternate impasse procedure authorized by HRS § 89-11 and entered into by the parties.

20.   With respect to balance of irreparable damage, the balance favors interlocutory relief. The expiration of the Unit 10 contract was June 30, 2009. The relatively short time frames for the interest arbitration process contained in HRS § 89-11 evince the legislature's intent that unresolved issues between the parties be dealt with expeditiously. To wilfully refuse to comply with the interest arbitration deadlines puts the interests of both parties and the public employees belonging to Unit 10, at risk. Additionally, the Unit 10 members do not have the legal right to strike, and the interest arbitration proceeding is their only means to obtain a new or renewed collective bargaining agreement once impasse occurs. Therefore, the interest arbitration hearing should not be unduly delayed.

21.   For similar reasons, public interest supports interlocutory relief. Additionally, public interest favors interlocutory relief inasmuch as "[the need for good faith bargaining or negotiation is fundamental to bringing to fruition the legislatively declared policy to promote harmonious and cooperative relations between government and its employees and to protect the public by assuring effective and orderly operations of government." Board of Education v. Hawaii Public Employment Relations Board, 56 Haw. 85, 87, 528 P.2d 809. 811 (1974).

(Footnote omitted.)

13.

The HLRB disagreed with Employer's claim that UPW waived its right to participate in the interest arbitration hearing. The HLRB concluded that the severe remedy of not allowing UPW to participate in the interest arbitration hearing "would not be a fair remedy for the alleged prohibited practice committed" by UPW, especially since some of the delay in selecting the neutral arbitrator may be attributed to Employer. Instead, the HLRB only granted Employer's motion in part, and it ordered that "AAA shall select the neutral arbitrator, and the parties shall take all actions necessary to expedite the scheduling of the interest arbitration proceeding." Pursuant to HLRB Order No. 2640, AAA administratively appointed Jonathan Dworkin (Dworkin) on September 30, 2009, as the neutral arbitrator for the Unit 10 interest arbitration.

UPW appealed the HLRB's Order No. 2640 to the Circuit Court. After a hearing held on March 9, 2010, the Circuit Court affirmed the HLRB's Order No. 2640 and issued its "Decision and Order Affirming Board Order No. 2640, Dated September 25, 2009."[13] On April 1, 2010, the Circuit Court filed its "Final Judgment" pursuant to its Decision and Order. In Appeal No. 30444, UPW appeals from the April 1, 2010, Final Judgment of the Circuit Court.

IV.

A.

In the meantime, on September 10, 2009, UPW filed a "Motion to Compel Arbitration, Appointment of Arbitrators, and Other Appropriate Relief" (Motion to Compel Arbitration) in the Circuit Court in S.P. No. 09-1-0305. UPW relied on HRS Chapter 658A, Hawaii's Uniform Arbitration Act, as the basis for the Circuit Court's jurisdiction and authority to provide the requested relief, which included a request for an order compelling arbitration and an order appointing or determining the method of appointing the neutral arbitrator.

---

[13] The Honorable Karl K. Sakamoto presided.

14

On October 21, 2009, the Circuit Court issued an order granting in part and denying in part UPW's Motion to Compel Arbitration (Order Regarding UPW's Motion to Compel Arbitration).[14/]  The Circuit Court ruled that it "lack[ed] subject matter jurisdiction over the issues presented regarding prohibited practices" and that the HLRB had jurisdiction over these issues under HRS § 89-14.  The Circuit Court alternatively ruled that if it had jurisdiction, then: (1) under the primary jurisdiction doctrine, the HLRB should have the first opportunity to address the issues presented; and (2) the HLRB having rendered its ruling on the issues, the Circuit Court adopted the HLRB's rulings regarding the selection of the arbitration panel, including the selection of Dworkin by AAA, as ordered by the HLRB, as the neutral arbitrator.

B.

After Dworkin was selected as the neutral arbitrator, the arbitration hearings began on November 4, 2009, and the arbitration panel rendered a final decision and award (Arbitration Award) on January 14, 2010.  The Arbitration Award ordered that the negotiated provisions of the prior 2007-2009 CBA be carried forward into the 2009-2011 CBA, except where modified by the Arbitration Award or by mutual agreement of the parties.  The Arbitration Award further ordered the parties to "meet and confer, without undue delay, and draft such language for the 2009-2011 [CBA] as is necessary and appropriate to give effect to the [awards set forth in the Arbitration Award]."

On February 19, 2010, UPW filed a "Motion to Confirm and Enforce Arbitration Award, Entry of Judgment, and Order Allowing Costs and/or Attorney's Fees" (Motion to Confirm Arbitration Award), pursuant to HRS Chapter 658A, with the Circuit Court in S.P. No. 09-1-0305.  Employer opposed the motion, arguing that the Circuit Court lacked jurisdiction under

---

[14/]  The Honorable Sabrina S. McKenna presided over the proceedings related to UPW's Motion to Compel Arbitration.

HRS Chapter 658A to confirm the Arbitration Award.[15] Following a hearing on UPW's Motion to Confirm Arbitration Award, the Circuit Court, on May 18, 2010, issued an order granting the motion (Order Confirming Arbitration Award).[16] On that same date, the Circuit Court entered its Final Judgment. In Appeal No. 30568, UPW appeals from the May 18, 2010, Final Judgment of the Circuit Court.[17] The only aspect of the Final Judgment challenged by UPW on appeal is the Circuit Court's October 21, 2009, Order Regarding UPW's Motion to Compel Arbitration.

C.

On July 7, 2010, UPW filed its "Motion for Show Cause Order and for Civil Contempt" (Motion for Civil Contempt). In its motion, UPW asserted that the Arbitration Award, which the Circuit Court had confirmed, required Employer and UPW to meet and confer, without undue delay, and draft language for the 2009-2011 CBA for Unit 10 employees. UPW asked the Circuit Court "to cite the Employer in civil contempt for refusal to meet and confer on and after May 18, 2010," and to impose judicial sanctions, including civil fines, attorney's fees, and costs against Employer. The Circuit Court denied UPW's Motion for Civil Contempt. On August 25, 2010, the Circuit Court issued its "Order Denying [UPW's] Motion for Show Cause Order and for Civil Contempt" (Order Denying Motion for Civil Contempt), in which the Circuit Court found that "there [was] no clear and convincing evidence that the [Employer] failed to comply with this Court's

_____

[15] The City filed a statement of no opposition as to UPW's motion to confirm and a statement of no position as to UPW's motion to enforce.

[16] The Honorable Gary W.B. Chang presided.

[17] On June 16, 2010, Employer, except for the City, filed a notice of appeal from the May 18, 2010, Final Judgment, which became Appeal No. 30568. On June 23, 2010, UPW filed a cross-appeal from this Final Judgment. Employer (except for the City which had not appealed) subsequently filed a motion to dismiss its appeal in Appeal No. 30568, which this Court granted. Thus only UPW's cross-appeal from the May 18, 2010, Final Judgment remains.

order and judgment filed on May 18, 2010."[18]   UPW subsequently filed a notice of appeal from the Circuit Court's Order Denying Motion for Civil Contempt in Appeal No. 30568.

V.

Meanwhile, after issuing Order No. 2640 granting in part the State's Motion for Interlocutory Relief, the HLRB, on February 9, 2010, issued Order No. 2686 in the parties' consolidated prohibited practice cases, Case Nos. CU-10-278 and CE-10-726.   Among other things, Order No. 2686 decided UPW's Motion to Dismiss Case No. CU-10-278 and its Motion for Summary Judgment in Case No. CE-10-726.   In Order No. 2686, the HLRB held that both Employer and UPW had "wilfully refused to complete the arbitration selection process for the Unit 10 interest arbitration[,]" and that such refusal constituted a violation of HRS § 89-11 and the parties' MOA.   The HLRB held that Employer had committed a prohibited pursuant to HRS § 89-13(a)(8) and UPW had committed a prohibited practice pursuant to HRS § 89-13(b)(4).   The HLRB ordered that a copy of its Order No. 2686 be posted for sixty days by the parties "on their website and in conspicuous places where employees of Unit 10 assemble[.]"

On February 12, 2010, UPW appealed Order No. 2686 to the Circuit Court.[19]   After a hearing held on October 12, 2010, the Circuit Court affirmed the HLRB's Order No. 2686 and issued its "Order Affirming Board Order No. 2686 Dated February 9, 2010."[20]   On November 10, 2010, the Circuit Court entered its Final Judgment pursuant to its Order.   In Appeal No. CAAP-10-0000166, UPW appeals from the November 10, 2010, Final Judgment of the Circuit Court.

---

[18]   The Honorable R. Mark Browning presided.

[19]   UPW's appeal was docketed in Circuit Court as Civil No. 10-1-0323-02.   The State filed a separate appeal of Order No. 2686, which was consolidated with UPW's appeal in Civil No. 10-1-0323-02.

[20]   The Honorable Karl K. Sakamoto presided.

17

DISCUSSION

In the three consolidated appeals, UPW appeals Circuit Court rulings issued at various stages of the interest arbitration proceedings. Certain of the issues UPW raises in the appeals are the same or overlap. In the consolidated appeals, UPW argues that the Circuit Court erred in: (1) determining that the HLRB, and not the Circuit Court, had jurisdiction to resolve the parties' dispute over the selection of the neutral arbitrator; (2) determining that the HLRB had not exceeded its authority in issuing the order for interlocutory relief directing the AAA to select the neutral arbitrator; (3) determining that the HLRB had not erred or violated UPW's due process rights in ruling that UPW had committed a prohibited practice in connection with the selection of the neutral arbitrator; and (4) denying UPW's motion to find Employer in civil contempt.

I.

A.

We first address whether certain issues UPW raises on appeal are moot.

> *A case is moot if it has lost its character as a present, live controversy of the kind that must exist if courts are to avoid advisory opinions on abstract propositions of law. The rule is one of the prudential rules of judicial self-governance founded in concern about the proper -- and properly limited -- role of the courts in a democratic society. We have said the suit must remain alive throughout the course of litigation to the moment of final appellate disposition to escape the mootness bar.*
>
> Simply put, *a case is moot if the reviewing court can no longer grant effective relief.*

Kahoʻohanohano v. State, 114 Hawaiʻi 302, 332, 162 P.3d 696, 726 (2007) (formatting altered; internal quotation marks, citations, and brackets omitted).

As noted, in these consolidated appeals, neither UPW nor Employer challenges the terms of the Arbitration Award or seeks to invalidate the award. Indeed, UPW filed a motion in Circuit Court to confirm the Arbitration Award and argues on appeal that the Circuit Court erred in denying UPW's motion to

find Employer in civil contempt for failing to comply with the award. Under these circumstances, we conclude that the issues raised by UPW relating to the selection of the neutral arbitrator are moot because there is no live controversy between UPW and Employer regarding the terms of the Arbitration Award and thus no effective relief can be granted on such issues.

B.

UPW argues that the Arbitration Award did not erase the HLRB's finding in Order No. 2686 that UPW committed a prohibited practice in connection with the selection of the neutral arbitrator. UPW does not identify any collateral consequences resulting from this finding, but argues that it may pursue an appeal to legally remove this finding. In support of its claim, UPW cites NLRB v. Mexia Textile Mills, Inc., 339 U.S. 563 (1950). However, Mexia Textile does not support UPW's argument. In Order No. 2686, the HLRB held that both Employer and UPW had "wilfully refused to complete the arbitration selection process for the Unit 10 interest arbitration[,]" and that such refusal constituted a violation of HRS § 89-11 and the parties' MOA.

In Mexia Textile, the National Labor Relations Board (NLRB) ordered the employer to cease and desist from its refusal to bargain in good faith with the union. Id. at 566. The NLRB then petitioned the Court of Appeals for the Fifth Circuit to enforce its order. Id. The Fifth Circuit deferred action on NLRB's petition, referring the case back to the NLRB to determine whether the employer had complied with the order and whether the order was moot. Id. at 566-67. On certiorari review, the Supreme Court stated:

> We think it plain from the cases that the employer's compliance with an order of the Board does not render the cause moot, depriving the Board of its opportunity to secure enforcement from an appropriate court. . . . A Board order imposes a continuing obligation; and the Board is entitled to have the resumption of the unfair practice barred by an enforcement decree.

Id. at 567.

19

Unlike Mexia Textile, the HLRB is not seeking judicial enforcement of Order No. 2686, and the HLRB's finding in Order No. 2686 challenged by UPW does not impose any continuing obligation on UPW. The HLRB's Order No. 2686 related to the selection of the neutral arbitrator, found that both parties had engaged in prohibited practices, and ordered the posting of the HLRB's order for sixty days. UPW does not have any continuing obligation under Order No. 2686 that could save its challenge to that order from being moot.

C.

Although UPW's issues regarding the selection of the neutral arbitrator are moot, the Hawaiʻi Supreme Court has recognized a public interest exception to the mootness doctrine. HGEA, 124 Hawaiʻi at 202 n.8, 239 P.3d at 6 n.8. This exception applies "[w]hen the question involved affects the public interest and an authoritative determination is desirable for guidance of public officials[.]" Id. (internal quotation marks and citation omitted). In determining whether the public interest exception applies, "we look to (1) the public or private nature of the question presented, (2) the desirability of an authoritative determination for the future guidance of public officers, and (3) the likelihood of future reference of the question." Id. (internal quotation marks and citation omitted).

In HGEA, the Hawaiʻi Supreme Court applied the public interest exception to address issues concerning the jurisdiction of the HLRB and the circuit court to decide claims related to the imposition of furloughs on government employees, even though the furlough controversy was moot because the parties had settled the underlying litigation. Id. Similarly, we conclude that the issues of whether the HLRB or the Circuit Court had original jurisdiction to resolve the dispute over the selection of the neutral arbitrator, and whether the HLRB exceeded its authority in issuing its order for interlocutory relief, fall within the public interest exception.

20

First, these issues are public in nature as they relate to the process for determining the terms of a CBA for a public-employee bargaining unit through interest arbitration. Second, a determination of these issues would provide useful guidance to public officers involved in the collective bargaining process. Third, because interest arbitration is required by HRS § 89-11 to resolve impasses between government employers and many government-employee bargaining units in the negotiation of collective bargaining agreements, it is reasonably likely that these issues will arise again in the future.

Accordingly, we address the issues raised by UPW regarding whether (1) the HLRB or the Circuit Court had jurisdiction to determine the parties' dispute over the selection of the neutral arbitrator; and (2) whether the HLRB exceeded its authority in issuing the order for interlocutory relief directing the AAA to select the neutral arbitrator. We do not address the issue of whether the HLRB erred or violated UPW's due process rights in ruling that UPW had committed a prohibited practice in connection with the selection of neutral arbitrator. We conclude that this last issue turns on the particular facts and circumstances of this case and does fall within the public interest exception.

II.

UPW argues that the Circuit Court, not the HLRB, had original jurisdiction to resolve the parties' dispute over the selection of a neutral arbitrator for their interest arbitration. We disagree.

"Whether a court possesses subject matter jurisdiction is a question of law reviewable de novo." HGEA, 124 Hawai'i at 201, 239 P.3d at 5 (internal quotation marks and citation omitted).

A.

The HLRB is tasked with administering the provisions of HRS Chapter 89, entitled "Collective Bargaining in Public

Employment." See HRS § 89-1(b) (2012). The Legislature created the HLRB "to ensure that collective bargaining is conducted in accordance with [Chapter 89] . . . ." HRS § 89-5(a) (2012). Accordingly, the HLRB is required, among other things, to resolve controversies arising under HRS Chapter 89 and conduct proceedings on complaints of prohibited practices. See HRS § 89-5(i)(3), (i)(4).

Under HRS § 89-14 (2012),[21] the HLRB has "exclusive original jurisdiction" over "[a]ny controversy concerning prohibited practices[.]"[22] HRS § 89-13 defines "prohibited practices" as including to wilfully: (1) "[r]efuse to participate in good faith in the mediation and arbitration procedures set forth in section 89-11"; (2) "[r]efuse or fail to comply with any provision of [Chapter 89]"; and (3) "[v]iolate the terms of a collective bargaining agreement[.]" HRS § 89-13(a)(6), (a)(7), (a)(8); HRS § 89-13(b)(3), (b)(4), (b)(5).[23]

---

[21] HRS § 89-14 provides:

> Any controversy concerning prohibited practices may be submitted to the board in the same manner and with the same effect as provided in section 377-9; provided that the board shall have exclusive original jurisdiction over such a controversy except that nothing herein shall preclude (1) the institution of appropriate proceedings in circuit court pursuant to section [89-12(c)] or (2) the judicial review of decisions or orders of the board in prohibited practice controversies in accordance with section 377-9 and chapter 91. All references in section 377-9 to "labor organization" shall include employee organization.

(Brackets in original.)

[22] In 1982, the Hawai'i Legislature amended HRS § 89-14 to legislatively overrule the Intermediate Court of Appeals decision in Winslow v. State, 2 Haw. App. 50, 56-57, 625 P.2d 1046, 1051-52 (1981), which held that circuit courts and the predecessor to the HLRB shared concurrent jurisdiction over prohibited practice complaints filed under HRS Chapter 89. See HGEA, 124 Hawai'i at 203, 239 P.3d at 7. In overruling Winslow, "the [L]egislature clearly intended for the HLRB to have exclusive original jurisdiction over prohibited practice complaints[.]" Id. at 204, 239 P.3d at 8 (emphasis added).

[23] HRS § 89-13 provides in relevant part:

> (a)    It shall be a prohibited practice for a public employer or its designated representative wilfully to:

(continued...)

22

For certain bargaining units including Unit 10, when there is an impasse between a public employer and the exclusive bargaining representative of the bargaining unit regarding the terms of a renewed CBA, HRS § 89-11 first provides for mediation. See HRS § 89-11(e). For these bargaining units, if the impasse continues for more than twenty days, HRS § 89-11 mandates that the impasse be submitted for resolution through arbitration. See HRS § 89-11 (a), (e), (f), (g). HRS § 89-11(e) establishes a default procedure for selecting the arbitration panel and conducting the arbitration hearing. However, HRS § 89-11(a)[24] authorizes the parties to agree to an alternate impasse procedure culminating in an arbitration decision. Specifically, HRS § 89-11(a) provides in relevant part:

> A public employer and an exclusive representative may enter, at any time, into a written agreement setting forth an alternate impasse procedure culminating in an arbitration decision pursuant to subsection (f), to be invoked in the

---

(...continued)

> . . . ;
>
> (6)    Refuse to participate in good faith in the mediation and arbitration procedures set forth in section 89-11;
>
> (7)    Refuse or fail to comply with any provision of this chapter;
>
> (8)    Violate the terms of a collective bargaining agreement;
>
> . . . .
>
>     (b)    It shall be a prohibited practice for a public employee or for an employee organization or its designated agent wilfully to:
>
> . . . ;
>
> (3)    Refuse to participate in good faith in the mediation and arbitration procedures set forth in section 89-11;
>
> (4)    Refuse or fail to comply with any provision of this chapter; or
>
> (5)    Violate the terms of a collective bargaining agreement.

[24] See footnote 9, supra.

> event of an impasse over the terms of an initial or renewed agreement.

Although HRS § 89-11(a) permits the parties to agree to an alternate procedure for selecting arbitrators and conducting the arbitration, HRS § 89-11 requires that an impasse on which the parties cannot reach mutual agreement be resolved through arbitration.

In this case, the parties agreed to an alternate impasse procedure pursuant to HRS § 89-11(a). The MOA set forth the procedures and deadline for the selection of a neutral arbitrator. However, the parties failed to meet this deadline. Both Employer and UPW filed prohibited practice complaints with the HLRB. They each accused the other party of committing a prohibited practice under HRS § 89-13 by wilfully violating the MOA and HRS § 89-11 in refusing to comply with the procedures set forth in the MOA for selecting the neutral arbitrator.

As noted, HRS § 89-13 defines "prohibited practices" to include the wilful refusal "to participate in good faith in the mediation and arbitration procedures set forth in section 89-11" as well as the wilful violation of any provision of HRS Chapter 89 or the terms of a collective bargaining agreement. Under HRS § 89-14, the HLRB has "exclusive original jurisdiction" over "[a]ny controversy concerning prohibited practices[.]" Here, the parties' claims regarding their dispute over the selection of a neutral arbitrator, as alleged in their prohibited practice complaints, clearly involved a controversy concerning prohibited practices. See Borough of Nazareth v. Pennsylvania Labor Relations Board, 626 A.2d 493, 496 (Pa. 1993) (holding that a government employer's refusal to name an arbitrator and failure to proceed to interest arbitration constituted an unfair labor practice within the jurisdiction of the Pennsylvania Labor Relations Board). We therefore conclude that the HLRB had exclusive original jurisdiction to determine the controversy concerning the selection of the neutral arbitrator.

24

B.

UPW, however, asserts that the Circuit Court had exclusive original jurisdiction to resolve the parties' dispute over the selection of the neutral arbitrator under Hawai'i's Uniform Arbitration Act, HRS Chapter 658A. We disagree.

While the parties' prohibited practices complaints were pending before the HLRB, UPW filed its Motion to Compel Arbitration with the Circuit Court. UPW brought the Motion to Compel Arbitration pursuant to HRS Chapter 658A and requested that the Circuit Court resolve the parties' dispute over the selection of the neutral arbitrator.

HRS Chapter 658A governs "an agreement to arbitrate," HRS § 658A-3 (Supp. 2013), and provides that:

> (a) A court of this State having jurisdiction over the controversy and the parties may enforce an agreement to arbitrate.
>
> (b) An agreement to arbitrate providing for arbitration in this State confers exclusive jurisdiction on the court to enter judgment on an award under this chapter.

HRS § 658A-26 (Supp. 2013).

UPW contends that the MOA is an "agreement to arbitrate" within the meaning of HRS Chapter 658A, and therefore, it appropriately sought relief from the Circuit Court pursuant to HRS Chapter 658A. Employer, on the other hand, argues that the MOA is not an "agreement to arbitrate" under HRS Chapter 658A, because it is not an agreement to submit their differences to arbitration.[25] Instead, Employer asserts that arbitration in this case was mandated by statute, not by the agreement of the parties, and therefore HRS Chapter 658A does not apply.

---

[25] In support of their contentions, both UPW and Employer cite to HRS § 658A-6 (Supp. 2013), which provides in relevant part:

> (a) An agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract.

Unlike other jurisdictions, the Hawai'i Legislature has not provided specific guidance on whether HRS Chapter 658A applies to statutorily-mandated interest arbitrations under HRS Chapter 89.[26/] Hawai'i appellate courts also have not addressed this specific question.

Courts from other jurisdictions have discussed the difference between voluntary arbitration based on an agreement to arbitrate and compulsory arbitration mandated by statute:

> [I]t should be observed that the essence of arbitration, as traditionally used and understood, is that it be voluntary and on consent. The introduction of compulsion to submit to this informal tribunal is to change its essence. It is very easy to transfer, quite fallaciously, notions and principles applicable to voluntary arbitration to "compulsory" arbitration, because, by doubtful logic but irresistible usage, both systems carry the descriptive noun "arbitration" in their names. The simple and ineradicable fact is that voluntary arbitration and compulsory arbitration are fundamentally different if only because one may, under our system, consent to almost any restriction upon or deprivation of right, but similar restrictions or deprivations, if compelled by government, must accord with procedural and substantive due process.

Mount St. Mary's Hosp. of Niagara Falls v. Catherwood, 260 N.E.2d 508, 511 (N.Y. 1970) (citation omitted); see American Universal

---

[26/] HRS Chapter 658A is modeled after the Revised Uniform Arbitration Act (RUAA), which revised the Uniform Arbitration Act (UAA). Other jurisdictions that have adopted general arbitration statutes modeled after the UAA or RUAA have provided specific statutory guidance on whether their version of the UAA or RUAA apply to arbitrations under their collective bargaining laws. See, e.g., Mass. Gen. Laws Ann. ch. 251, § 1 (West, Westlaw through 2013 1st Annual Sess.) (generally excluding provisions of Massachusetts's version of the UAA from applying to collective bargaining agreements to arbitrate); N.J. Stat. Ann. § 2A:23B-3 (West, Westlaw through 2013 Legis. Sess.) (excluding "an arbitration between an employer and a duly elected representative of employees under a [CBA] or collectively negotiated agreement" from New Jersey's version of the RUAA); Alaska Stat. Ann. § 09.43.010 (West, Westlaw through 2013 1st Reg. Sess.) (excluding provisions of Alaska's version of the RUAA from applying to "a labor-management contract unless they are incorporated into the contract by reference or their application is provided for by statute"); Me. Rev. Stat. Ann. tit. 26, § 1292 (West, Westlaw through 2013 1st Reg. Sess.) (specifying that review of interest arbitrations shall be in accordance with the Maine Rules of Civil Procedure, Rule 80B, relating to review of governmental action); N.M. Stat. Ann. § 10-7E-18(A)(5) (West, Westlaw through 2013 1st Reg. Sess.) (stating that in rendering a decision in an interest arbitration, "[t]he arbitrator shall render a final, binding, written decision resolving unresolved issues pursuant to . . . the Public Employee Bargaining Act and the Uniform Arbitration Act" and providing that "[t]he decision shall be subject to judicial review pursuant to the standard set forth in the Uniform Arbitration Act").

Ins. Co. v. DelGreco, 530 A.2d 171, 175-79 (Conn. 1987); Board of Educ. of Carlsbad Mun. Schools v. Harrell, 882 P.2d 511, 517-18 (N.M. 1994). Relying on the distinction between voluntary and compulsory arbitration, these courts have concluded that the extremely deferential standard of review applicable to voluntary arbitration should not apply to compulsory arbitration. Mount St. Mary's Hosp., 260 N.E.2d at 514-17; DelGreco, 530 A.2d at 175-79; Harrell, 882 P.2d at 525-27.

The Hawai'i Supreme Court has focused on the existence of an agreement to arbitrate in determining whether to compel arbitration. Siopes v. Kaiser Foundation Health Plan, Inc. 130 Hawai'i 437, ---, 312 P.3d 869, 878 (2013). "When presented with a motion to compel arbitration, the court is limited to answering two questions: 1) whether an arbitration agreement exists between the parties; and 2) if so, whether the subject matter of the dispute is arbitrable under such agreement." Id. (internal quotation marks and citation omitted). The supreme court has also stated that HRS Chapter 658A "interpose[s] a written and otherwise valid contract to arbitrate as a precondition to enforcement." Id. at ---, 312 P.3d at 879 (internal quotation marks and citation omitted).[27]

Here, UPW argues that the parties' MOA constituted an "agreement to arbitrate" that gave the Circuit Court exclusive original jurisdiction under HRS Chapter 658A to resolve the

---

[27] As noted, HRS Chapter 658A is modeled after the RUAA. In a law review article, Francis J. Pavetti, Chairman of the Drafting Committee for the RUAA, stated that "[o]ne of the cornerstones of party autonomy under the RUAA is the requirement that RUAA only applies if there is an agreement to arbitrate." Francis J. Pavetti, Why the States Should Enact the Revised Uniform Arbitration Act, 3 Pepp. Disp. Resol. L.J. 443, 444 (2003). Pavetti further states that "[t]he RUAA does not apply to statutorily mandated arbitrations not requiring an arbitration agreement." Id. at 444 n.4

The website for the Uniform Law Commission also contains a briefing on the RUAA, which advises that: "Because RUAA only applies where there is an agreement to arbitrate, arbitrations prescribed and required by state statute are not covered by RUAA. Thus, statutory labor arbitrations and lemon law arbitrations, and other such statutory arbitrations are not covered." Francis J. Pavetti, The Revised Uniform Arbitration Act (RUAA), Uniform Law Commission, 2 (Jan. 27, 2014), http://www.uniformlaws.org/Shared/Docs/RUAA%20Briefing%20Sheet_v2_030508.pdf.

parties' dispute over the neutral arbitrator. The potential difficulty with this argument is that while the MOA set forth an alternative impasse procedure for selecting the arbitrators and conducting the interest arbitration, the requirement that the parties' impasse be resolved through arbitration was mandated by HRS § 89-11. While HRS § 89-11(a) authorizes the parties to agree to alternate impasse procedures, it provides that these procedures will "culminat[e] in an arbitration decision pursuant to subsection (f)[.]"

However, we need not resolve the question of whether HRS Chapter 658A applies to interest arbitrations under HRS Chapter 89.[28] This is because even if the MOA qualifies as an "agreement to arbitrate" that is subject to the provisions of HRS Chapter 658A, the exclusive original jurisdiction granted to the HLRB over controversies concerning prohibited practices by HRS § 89-14 would supersede HRS Chapter 658A. HRS § 89-19 (2012) explicitly states that the provisions of HRS Chapter 89 "shall take precedence over all conflicting statutes concerning this subject matter and shall pre-empt all contrary local ordinances, executive orders, legislation, or rules adopted by the State[.]" To the extent that there may be a conflict between the jurisdictional provisions of HRS Chapters 89 and 658A, Chapter 89 takes precedence over Chapter 658A.

C.

Therefore, the Circuit Court did not err in: (1) affirming the HLRB's determination in Order Nos. 2640 and 2686 that the HLRB had exclusive original jurisdiction over the parties' dispute regarding the selection of the neutral arbitrator; and (2) denying UPW's Motion to Compel Arbitration for lack of subject matter jurisdiction.

---

[28] We note, however, that the Legislature may wish to clarify its intent on this question in light of the parties' conflicting views, and the lack of specific guidance by the Legislature, on whether HRS Chapter 658A applies to interest arbitrations under HRS Chapter 89.

III.

UPW argues that the HLRB exceeded its statutory authority by ordering interlocutory relief which did not follow the procedures for selecting the neutral arbitrator set forth in the MOA. UPW further argues that the HLRB erred in ordering interlocutory relief against UPW without evidence of UPW's wilful refusal to comply with the MOA. We disagree.

The HLRB's authority when resolving the parties' prohibited practice complaints was not limited by their agreement to an alternate impasse procedure. In addition, the HLRB was presented with evidence that supported its preliminary finding that UPW likely committed a prohibited practice by wilfully failing to comply with the MOA and HRS § 89-11, and the HLRB's remedy of directing AAA to select the neutral arbitrator was not an abuse of discretion under the circumstances presented and served to expedite an already delayed interest arbitration process. Accordingly, we conclude that the HLRB did not exceed its statutory authority or abuse its discretion in ordering that AAA would select the neutral arbitrator.

Whether the HLRB exceeded the bounds of its statutory authority to order remedies is a matter of statutory interpretation which we review *de novo*. See Del Monte Fresh Produce (Hawaii), Inc. v. Int'l Longshore & Warehouse Union, Local 142, AFL-CIO, 112 Hawaiʻi 489, 505, 146 P.3d 1066, 1082 (2006).

A.

When determining the statutory authority granted to an agency, we start with the text of the statute itself. Id. at 506, 146 P.3d at 1083. HRS § 89-5(i) (2012) provides, in relevant part:

> (i)   In addition to the powers and functions provided in other sections of [chapter 89], the board shall:
>
>      . . . .
>
> (3)   Resolve controversies under [chapter 89]; [and]

29

> (4)     Conduct proceedings on complaints of prohibited
>         practices by employers, employees, and employee
>         organizations and <u>take such actions with respect
>         thereto as it deems necessary and proper</u>[.]

(Emphases added.)[29]

Under HRS § 89-5(i), the HLRB is granted broad authority to determine what actions to take in resolving prohibited practice disputes under HRS Chapter 89. The Legislature's intent in this regard is manifested by its use of language granting the HLRB the authority to "take such actions . . . as it deems necessary and proper[.]" HRS § 89-5(i)(4); <u>see also</u> <u>Del Monte Fresh</u>, 112 Hawai'i at 506, 146 P.3d at 1083. Accordingly, the HLRB has broad statutory authority to resolve prohibited practice controversies.

Nevertheless, UPW contends that the HLRB's discretionary power should be limited by the provisions in the MOA. Specifically, UPW argues that the HLRB is precluded from interfering with the alternate impasse procedures agreed to by the parties. We disagree.

UPW relies on the language in HRS § 89-11(a), which states: "The board shall immediately discontinue the procedures initiated pursuant to subsection (d) or (e) [(the default impasse procedures under the statute)] and <u>permit the parties to proceed with their procedure.</u>" (Emphasis added.) However, UPW takes this provision out of context. The two preceding sentences read:

> In the absence of an alternate impasse procedure, the board
> shall assist in the resolution of the impasse at times and
> in the manner prescribed in subsection (d) or (e), as the
> case may be. If the parties subsequently agree on an
> alternate impasse procedure, the parties shall notify the
> board.

HRS § 89-11(a).

Read in context, the sentence upon which UPW relies to limit the HLRB's authority simply provides that an alternative

---

[29] Pending the final determination of a controversy concerning a prohibited practice, "the [HLRB] may, after hearing, make interlocutory orders which may be enforced in the same manner as final orders." HRS § 377-9(d) (Supp. 2013); HRS § 89-14.

impasse procedure mutually agreed to by the parties will supercede the default impasse procedure set forth in HRS § 89-11. HRS § 89-11(a), however, does not limit the HLRB's authority to intervene when a party commits a prohibited practice by refusing to comply with the alternate impasse procedure.

B.

Having determined that the HLRB has broad discretion to resolve prohibited practices and that it was authorized to intervene and address prohibited practices arising out of the parties' failure to comply with the MOA, we consider whether the HLRB abused its discretion in the remedy it chose of having AAA select the neutral arbitrator. See Del Monte Fresh, 112 Hawai'i at 508, 146 P.3d at 1085. The purpose of HRS § 89-11 is to facilitate the timely resolution of an impasse in negotiations over collective bargaining agreements by requiring impasse disputes to be resolved through arbitration.

Here, Employer and UPW entered into the MOA, which set forth an alternate impasse procedure, on March 3, 2009, approximately one month after the HLRB declared an impasse. Under the MOA, the deadline for selecting the neutral arbitrator was within five days of receiving the AAA list, or July 22, 2009. This date was amended by mutual agreement of the parties to July 28, 2009. However, the first strike did not occur until August 18, 2009.

The record indicates that certain delays in the process could be attributed to UPW. This included evidence that between July 15, 2009, and July 28, 2009, Employer's chief negotiator (Laderta) attempted to contact UPW's authorized representative (Nakanelua), but that he never returned her calls; that by letter dated July 28, 2009, which was the extended deadline for selecting the neutral arbitrator agreed to by the parties, UPW's attorney (Takahashi) notified Employer that he would be representing UPW in the interest arbitration; and that there were delays in UPW's exercise of its first strike and its notification

31

to Employer of this strike, which Employer asserted was not received until August 24, 2009.

After each party exercised its first strike, Employer refused to continue with any strikes, because Employer asserted that UPW's "conduct throughout this process show[ed] bad faith."[30] Thus, the parties were at a stalemate in the selection process under the MOA. Both parties then filed prohibited practice complaints accusing each other of misconduct in failing to comply with the selection of the neutral arbitrator under the MOA. The HLRB noted that although the parties had failed as of September 25, 2009, the date of its order for interlocutory relief, to select a neutral arbitrator, the parties had consumed vast amounts of time in correspondence and litigation accusing each other of misconduct. The HLRB also found that there had been undue delay in the selection of the neutral arbitrator.

The purpose of the interest arbitration was to settle disputes over the terms of the renewed Unit 10 CBA for the period from July 1, 2009, to June 30, 2011, and the stalemate occurred in late August 2009. The prior CBA had expired on June 30, 2009. Moreover, the MOA set September 11, 2009, as the date for the interest arbitration to begin, but the parties' actions precluded the arbitration from commencing on that date and threatened the timely resolution of the impasse. In Order No. 2640, the HLRB specifically balanced the likelihood that Employer would succeed on its prohibited practice claim, any irreparable damage which may occur without intervention, and public interest considerations. Contrary to UPW's claim, we conclude that there was sufficient evidence of UPW's wilful refusal to comply with the MOA to justify the interlocutory relief granted by the HLRB. We conclude that the HLRB did not abuse its discretion in facilitating a timely resolution of the parties' stalemate in

---

[30] Employer cited the delays caused by UPW in the striking process and UPW's refusal to relinquish its claim that Halvorson lacked authority to make the strikes on behalf of the Employer.

selecting a neutral arbitrator by having AAA select the neutral arbitrator.

IV.

UPW argues that the Circuit Court erred in denying its Motion for Civil Contempt.[31]/ UPW's Motion for Civil Contempt was based on its claim that Employer had violated the Arbitration Award and the Circuit Court's Order Confirming Arbitration Award by failing to comply with the requirement of the Arbitration Award that the parties meet and confer, without undue delay, and draft language for the 2009-2011 CBA for Unit 10 employees.

We conclude that the claims raised in UPW's Motion for Civil Contempt were prohibited practice claims that fell within the exclusive original jurisdiction of the HLRB. For this reason, the Circuit Court did not err in denying the relief requested by UPW.

The Arbitration Award provided that UPW and Employer "shall meet and confer, without undue delay, and draft such language for the 2009-2011 [CBA] as is necessary and appropriate to give effect to the [awards set forth in the Arbitration Award]." In its Motion for Civil Contempt, UPW alleged that after the Arbitration Award was issued on January 14, 2010, UPW made repeated requests to Employer to meet and confer to draft and finalize the Unit 10 CBA covering the period from July 1, 2009, to June 30, 2011, as required by the Arbitration Award, but that Employer failed and refused to meet and confer.

HRS § 89-11(g) states that "[t]he decision of the [interest] arbitration panel shall be final and binding upon the parties on all provisions submitted to the arbitration panel." HRS § 89-11(g) further requires that the parties to an interest arbitration "take whatever action is necessary to carry out and

---

[31]/ We reject Employer's claim that UPW was barred from challenging the Circuit Court's denial of UPW's Motion for Civil Contempt on the ground that the challenged order was entered after UPW filed its cross-appeal. UPW's challenge to the Circuit Court's Order Denying Motion for Civil Contempt was not based on its cross-appeal, but on its notice of appeal from the Order Denying Motion for Civil Contempt.

effectuate the final and binding agreement[,]" which includes the arbitration panel's decision. As noted, HRS § 89-13(a) provides that it is a prohibited practice for an employer wilfully to: "[r]efuse to participate in good faith in the mediation and arbitration procedures set forth in section 89-11"; "[r]efuse or fail to comply with any provision of [chapter 89]"; or "[v]iolate the terms of a collective bargaining agreement[.]" HRS § 89-13(a)(6), (a)(7), (a)(8). UPW's claim that Employer violated the terms of the Arbitration Award by failing to meet and confer as required by the Arbitration Award involved a "controversy concerning prohibited practices." See HRS § 89-14. Accordingly, the HLRB had exclusive original jurisdiction over the claims raised in UPW's Motion for Civil Contempt, and the Circuit Court lacked jurisdiction to decide the Motion for Civil Contempt. See id; HGEA, 124 Hawai'i at 210, 239 P.3d at 14 ("[I]t would be unwise for us to bring about a policy that effectively circumscribes HLRB's exclusive original jurisdiction over 'any controversy concerning prohibited practices,' as mandated by the legislature in HRS § 89-14." (brackets omitted)).

CONCLUSION

For the foregoing reasons, (1) in Appeal No. 30444, we affirm the Circuit Court's April 1, 2010, Final Judgment; (2) in Appeal No. 30568, (a) we affirm the Circuit Court's May 18, 2010, Final Judgment to the extent that it reflects the Circuit Court's ruling that the HLRB, and not the Circuit Court, had exclusive original jurisdiction over the parties' prohibited practice controversy regarding the selection of the neutral arbitrator, and (b) we vacate the Circuit Court's August 25, 2010, Order Denying Motion for Civil Contempt based on our conclusion that the HLRB, and not the Circuit Court, had exclusive original jurisdiction over the claims raised in UPW's Motion for Civil Contempt; and (3) in Appeal No. CAAP-10-0000166, we affirm the Circuit Court's November 10, 2010, Final Judgment, except that we decline on mootness grounds to address UPW's claim that the HLRB

erred or violated UPW's due process rights in ruling that UPW had committed a prohibited practice in connection with the selection of a neutral arbitrator.

On the briefs:

Herbert R. Takahashi
Rebecca L. Covert
Davina W. Lam
(Takahashi and Covert, AAL)
for United Public Workers, AFSCME,
   Local 646, AFL-CIO and
   Dayton Nakanelua

James E. Halvorson
Nelson Y. Nabeta
Jeffrey A. Keating
Deputy Attorneys General
Department of the Attorney
   General, State of Hawaiʻi
for State of Hawaiʻi; the Judiciary,
   Hawaii Health Systems Corporation;
   and Neil Dietz

Valri Lei Kunimoto
Hawaiʻi Labor Relations Board
for the Hawaiʻi Labor Relations Board
   and its members